IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Brunswick Division

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 CASE |
| | ) | NUMBER <u>15-20653</u> |
| GEORGE WALTER CROSBY, JR. | ) | |
| NANCY JUDD CROSBY | ) | |
| | ) | **FILED** |
| Debtors | ) | Lucinda B. Rauback, Clerk |
| _____ | ) | United States Bankruptcy Court |
| | ) | Brunswick, Georgia |
| SOUTHERN MOTORS OF | ) | *By arowe at 4:45 pm, Aug 14, 2015* |
| SAVANNAH, INC. | ) | |
| | ) | |
| Movant | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GEORGE WALTER CROSBY, JR. | ) | |
| NANCY JUDD CROSBY | ) | |
| | ) | |
| Respondents | ) | |
| _____ | ) | |
| GEORGE WALTER CROSBY, JR. | ) | |
| NANCY JUDD CROSBY | ) | ADVERSARY PROCEEDING |
| | ) | NUMBER <u>15-02013</u> |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SOUTHERN MOTORS OF | ) | |
| SAVANNAH, INC. | ) | |
| | ) | |
| Defendant | ) | |

**OPINION AND ORDER DETERMINING CERTAIN PROPERTY IS PROPERTY OF THE BANKRUPTCY ESTATE, DENYING REQUEST FOR RELIEF FROM STAY, AND <u>REQUIRING IMMEDIATE TURNOVER</u>**

This matter came on for expedited hearing on the Motion for Relief from Automatic Stay ("Motion") filed by

Southern Motors of Savannah, Inc. ("Southern Motors") with regard to a 2013 Honda Fit ("Vehicle") and the adversary complaint for turnover of the Vehicle filed by Debtors George Walter Crosby, Jr. and Nancy Judd Crosby. In essence, the Motion is a request for a declaratory judgment that the Vehicle is not property of the bankruptcy estate and that the stay does not apply. Accordingly, I initially consider the Motion as a counterclaim in the adversary proceeding. Only if I find that the Vehicle is property of the bankruptcy estate do I consider whether Southern Motors is entitled to stay relief.

After considering the parties' briefs and the evidence and legal arguments presented at hearing, I find that the Vehicle is property of the bankruptcy estate. Thus, Southern Motors violated the stay when it repossessed the vehicle post-petition.

Additionally, I find that there is no basis to grant relief from the stay at this time. Specifically, I find that, as to Southern Motors, the Crosbys successfully rebutted any presumption that their petition was filed not in good faith. The Motion is therefore denied and Southern Motors is ordered to turn over the vehicle to the Crosbys immediately.

## FINDINGS OF FACT

On August 3, 2015, the Crosbys filed a petition for chapter 13 bankruptcy relief ("Current Case"). (ECF No. 1.)[1] Prior to the filing of the Current Case, the Crosbys had been dismissed from a previous chapter 13 case and shortly thereafter had purchased the Vehicle from Southern Motors. The details of those two events are as follows.

On July 20, 2015, approximately two weeks before filing the Current Case, the Crosbys' previous chapter 13 bankruptcy case, No. 13-20635 ("Previous Case"), was dismissed. (Mot. for Relief, ECF No. 13 ¶ 2-3.) The Previous Case had been ongoing for a little over two years. (Id. at ¶ 2.)

The Previous Case primarily sought to save the Crosbys' home, but the Crosbys fell significantly behind on both their mortgage and the chapter 13 plan payments during the case. Mr. Crosby testified that they did not make any payments on their mortgage during the Previous Case.

The Crosbys' defaults on their mortgage and chapter 13 plan were a result of health and employment issues. Mrs. Crosby's employment was the couple's only source of income during the Previous Case. According to Mr. Crosby's testimony, Mrs. Crosby became sick during the Previous Case and was unable

---

[1] References to the chapter 13 case docket appear in the following format: (ECF No. ___.)

3

to work for at least a month. She was let go by her employer during that time and was unable to obtain new employment once she was able to work again. Mrs. Crosby finally got a new job approximately four months before the Current Case.

The day after the Previous Case was dismissed, the Crosbys bought the Vehicle from Southern Motors. Before purchasing the Vehicle, the Crosbys only had one vehicle with in excess of 300,000 miles. The Crosbys established that they needed a second vehicle so that Mr. Crosby could go to his frequent medical appointments while Mrs. Crosby traveled to and from work. Mr. Crosby testified that he must see his heart doctor on a weekly basis as a result of quadruple bypass heart surgery. He also testified that he has regular appointments with other doctors for numerous other health issues. Finally, Mr. Crosby established that a second vehicle was especially necessary in light of the likelihood that Mrs. Crosby's work schedule would be expanded to five days per week in the near future and require regular travel out of town to Waycross, Georgia.

To purchase the Vehicle, the Crosbys made a down payment of $3,100.00 and agreed to seventy-two monthly payments of $459.88 beginning September 4, 2014, at an agreed interest rate of 24.35%. Mr. Crosby testified that they acquired the

cash for the down payment as an advance on a distribution from the probate estate of Mrs. Crosby's recently deceased mother.

The Crosbys and a Southern Motors representative (hereinafter "Southern Motors") executed two documents related to the purchase of the Vehicle: a retail installment contract titled "Simple Finance Charge" ("Retail Installment Contract") and a form called the "Delivery Receipt."

Mr. and Mrs. Crosby and Southern Motors each signed the Retail Installment Contract. Below the parties' signatures, the Retail Installment Contract states, "Seller assigns its interest in this contract to Santander Consumer USA Inc. (Assignee) under the terms of Seller's agreement(s) with Assignee." Southern Motors signed the Retail Installment Contract a second time below that statement and marked a box labeled "Assigned without recourse."

The parties also each signed the Delivery Receipt. The Delivery Receipt by its terms is made a part of the Retail Installment Contract. In pertinent part, the Delivery Receipt provides that:

> IF A RETAIL INSTALLMENT CONTRACT IS EXECUTED AS A PART OF THIS SALES TRANSACTION, THEN BUYER AND SELLER INTEND THAT THIS CONTRACT WILL BE ASSIGNED BY SELLER, IN THE EVENT SELLER IS UNABLE TO ASSIGN THIS CONTRACT WITHIN _____ DAYS OF THE DATE HEREOF, THIS CONTRACT SHALL BE NULL AND VOID AND BUYER, IMMEDIATELY UPON NOTICE BY SELLER, SHALL DO ONE OF THE FOLLOWING: 1. PURCHASE THE VEHICLE FROM SELLER FOR THE CASH PRICE

> THEREOF SET FORTH HERIN; OR 2. RETURN THE VEHICLE DESCRIBED HEREIN TO SELLER AND PAY TO SELLER THE COST OF REPAIR OR ANY DAMAGE OCCURRING TO THE VEHICLE WHILE IN BUYERS POSSESSION.

The Delivery Receipt does not specify the number of days Southern Motors has to assign the Retail Installment Contract, that space on the form remaining blank, as shown above.

The Crosbys took possession of the Vehicle on July 21, 2015. On August 4, 2015, the day after the Crosbys filed the Current Case, Southern Motors was notified by Santander Auto Finance ("Santander") that they would not purchase the loan as a result of the Crosbys' bankruptcy filing. (Ex. B of ECF No. 13.)

Shortly thereafter, Mrs. Crosby was contacted on two occasions by someone named "Kip" informing her that financing for the vehicle had been denied and the vehicle must be returned to Southern Motors. Both times, Mrs. Crosby informed the caller that they had just filed for bankruptcy relief and would not return the vehicle. Additionally, Mr. Crosby called Kip on August 6, 2015, and provided him with the bankruptcy case number.

Sometime between the evening of August 6, 2015, and the morning of August 7, 2015, the vehicle was repossessed. Thereafter, on August 7, 2015, the Crosbys' bankruptcy attorney

contacted Southern Motors, stating that the Crosbys had recently filed for bankruptcy protection.

Presumably as a result of the call from the Crosbys' bankruptcy attorney, Southern Motors filed the Motion on August 7, 2015. (ECF No. 13.) Three days later, on August 10, 2015, the Crosbys' filed the adversary complaint for turnover of the Vehicle and damages pursuant to 11 U.S.C. § 362(k). (A.P. No. 15-02013, ECF No. 1.) Both Southern Motors and the Crosbys subsequently filed motions to expedite hearings on these matters. (ECF No. 21; A.P. No. 15-02013, ECF No. 3.)

## CONCLUSIONS OF LAW

### I.

### The Vehicle Is Property of the Estate.

The preliminary question before me is whether the Vehicle is property of the Crosbys' chapter 13 bankruptcy estate. I find that the Crosbys had an interest in the Vehicle at the time of their petition. The Vehicle is property of the estate.

"[A]ll legal or equitable interests of the debtor in property as of the commencement of the case" are property of the bankruptcy estate. 11 U.S.C. § 541(a)(1). Therefore, to the extent the Crosbys had a legal or equitable interest in the

Vehicle at the time of the filing of the petition, it became property of the estate.

Bankruptcy courts look to state law to determine a debtor's property interest unless some federal interest requires a different result. Butner v. United States, 440 U.S. 48, 55 (U.S. 1979). Under Georgia law, the statute of frauds requires that "any commitment to lend money" must be "in writing and signed by the party to be charged therewith." O.C.G.A. § 13-5-30. Additionally, under Georgia law, a contract between parties may be subject to a condition precedent that prevents contract formation until the condition is satisfied. O.C.G.A. § 13-3-4; see State Farm Mut. Auto. Ins. Co. v. Sargent, 354 S.E.2d 833, 834 (Ga. Ct. App. 1982); see also In re Weaver, No. 94-60116, 1995 WL 17005345, at *3 (Bankr. S.D. Ga. Mar. 30, 1995) (agreement never became enforceable due to the failure to satisfy the condition precedent of approval of financing).

A condition precedent is created by "language such as 'on condition that,' 'if,' and 'provided,' or by explicit statements that certain events are to be construed as conditions precedent." Choate Constr. Co. v. Ideal Elec. Contractors, Inc., 541 S.E.2d 435, 438 (Ga. Ct. App. 2000). However, if the contract's terms are clear and unambiguous and

8

do not clearly establish a condition precedent, the court cannot construe the contract to create one. Id.; see also King Indus. Realty, Inc. v. Rich, 481 S.E.2d 861, 864 (Ga. Ct. App. 1997) ("Georgia law favors conditions subsequent rather than precedent and favors remediation by damages rather than forfeiture.").

The first step in contract analysis is to look to the terms within the four corners of the contract to determine the intention of the parties. O.C.G.A. § 13-2-3; see Livoti v. Aycock, 590 S.E.2d 159, 164 (Ga. Ct. App. 2003); Stephens v. Parrino & Ware, 226 S.E.2d 809, 810 (Ga. Ct. App. 1976). To the extent that the contract is unambiguous, no further analysis is necessary. See O.C.G.A. § 13-2-3.

Here, the Retail Installment Contract and the Delivery Receipt are the only written, signed documents between the parties that govern the sale and purchase of the Vehicle that were presented at hearing. Both the Retail Installment Contract and the Delivery Receipt are unambiguous. Thus, my analysis is limited to the terms within their four corners.

The Delivery Receipt purports to create a condition precedent whereby "in the event [Southern Motors] is unable to assign" the Retail Installment Contract, the Retail Installment Contract becomes null and void. Southern Motors asserts that

because Santander refused to accept assignment of the Retail Installment Contract, the Retail Installment Contract became null and void and the Crosbys never acquired an interest in the Vehicle.

I disagree. According to the terms of the Retail Installment Contract, the purported condition precedent was satisfied. Southern Motors explicitly stated in the Retail Installment Contract, "[Southern Motors] *assigns* its interest in this contract to Santander Consumer USA Inc." (emphasis added.) It is irrelevant whether or not the assignment was actually completed or was reassigned back to Southern Motors, because as between the Crosbys and Southern Motors, the assignment was stated as complete. The business relationship between Southern Motors and Santander is between Southern Motors and Santander and does not involve the Crosbys.

The fact that Southern Motors did not insert a deadline on the Delivery Receipt for when successful assignment must occur further supports this interpretation. A deadline was not established because it was not necessary, given the parties' statement, and agreement, that the Retail Installment Contract was assigned.

The facts here while distinguishable from the facts in the case of Budget Car Sales v. Boddiford, in which the

10

Court of Appeals of Georgia found that a similar delivery receipt successfully imposed a condition precedent on a sales contract despite not establishing a deadline for assignment of the sales contract, in Boddiford, as here, there was an assignment. See 375 S.E.2d 632, 634 (Ga. Ct. App. 1988).

First, in Boddiford, the statement at the bottom of the sales contract provided that it "*may* be assigned . . . to Savannah Bank & Trust Company." Id. at 633 (emphasis added). Unlike here, the sales contract in Boddiford had not, by its terms, stated that the condition precedent had been met.

Second, the back of the sales contract in Boddiford contained a "form 'Assignment' for this purpose" signed by the car dealer. See id. The condition precedent "may be assigned" was met.

Third, the posture of the case in Boddiford was significantly different. See id. at 634. The sales contract there was successfully assigned and the buyer was attempting to use the blank space as establishing the condition precedent to render the sales contract null and void. See id.

Accordingly, I find that to the extent the Delivery Receipt creates a condition precedent, the Retail Installment Contract explicitly states that that condition was met. The Retail Installment Contract was enforceable as of the date it

11

was signed by both parties, July, 21, 2015. The Crosbys had an interest in the Vehicle as of that date. Such interest became property of the estate when the Crosbys filed their chapter 13 bankruptcy case on August 3, 2015, and the stay under 11 U.S.C. § 362(a) went into effect.

## II.

### Relief from the Stay Is Not Warranted on the Basis of the Presumption that the Petition Was Filed Not in Good Faith.

Under 11 U.S.C. § 362(c)(3), most individual debtors who file a new case within a year of having had a previous case (or cases) dismissed will be subject to a statutory presumption that the most recent case is not filed in good faith. See In re Whitaker, 341 B.R. 336, 342 (Bankr. S.D. Ga. 2006). As a result of this presumption, the automatic stay will automatically expire after a thirty-day safe harbor period. 11 U.S.C. § 362(c)(3)(B). However, a party in interest may rebut this presumption by clear and convincing evidence. 11 U.S.C. § 362(c)(3)(C).

In determining whether a party has rebutted the presumption, the court should consider what happened in the prior case and why the current case will not have the same outcome. See 11 U.S.C. § 362 (c)(4)(D)(i)(II)-(III).

Additionally, when the debtor has incurred a substantial new debt during the gap period between the cases, such debt must be treated in the chapter 13 plan under the terms of the agreement.

The Crosbys are subject to the presumption that their current case was not filed in good faith. 11 U.S.C. § 362(c)(3)(C)(i)(II)(cc). A finding that the Crosbys' filing was not in good faith with regard to Southern Motors would clearly establish "for cause" grounds for relief from the stay. However, based on the evidence presented at the hearing on August 13, 2015, I find that the Crosbys have rebutted, by clear and convincing evidence, the statutory presumption with regard to Southern Motors, that they filed the Current Case not in good faith.[2]

First, the Crosbys' proposed chapter 13 plan honors the terms of the Retail Installment Contract. The Crosbys propose to make payments of $459.88 directly to Southern Motors, or its assignee, starting with the September 4, 2015, payment. They have not sought to alter the terms of the Retail Installment Contract in any way.

Second, Mr. Crosby's testimony established a "substantial excuse" for the failure of the Previous Case. See

---

[2] Separately pending is the Crosbys' timely filed Motion to Extend the Stay with an objection deadline of August 19, 2015. (No. 15-20653, ECF No. 10.)

11 U.S.C. §§ 362(c)(4)(D)(i)(II). Mrs. Crosby's employment was the couple's only source of income during the Previous Case. Mr. Crosby testified that Mrs. Crosby got sick and lost her job during that case. Once she was able to work again, she was unable to find new employment right away, causing them to fall further behind in their payments.

Third, Mr. Crosby's testimony also established that the Crosbys have had a "substantial change in [their] financial or personal affairs." See 11 U.S.C. § 362(c)(4)(D)(i)(III). Mrs. Crosby obtained new employment approximately four months ago and has the prospect of increasing her work hours and take-home pay. Additionally, Mrs. Crosby has become eligible for Social Security benefits; Mr. Crosby will become eligible for the same on September 1, 2015. Based on Mrs. Crosby's current take-home pay and these two additional sources of income, the Crosbys' proposed chapter 13 plan appears feasible.

As a result of the Crosbys' rebuttal of the presumption that their filing is not in good faith, relief from the automatic stay on this basis is not warranted. Southern Motors must turn over the vehicle to the Crosbys immediately.

**ORDER**

The Motion for Relief from Automatic Stay is **ORDERED DENIED**; and

**FURTHER ORDERED** that the request for turnover in the Debtors' adversary complaint is **GRANTED**. Southern Motors shall immediately turn over the 2013 Honda Fit to the Crosbys. The Adversary Proceeding will continue to consider damages under 11 U.S.C. § 362(k).

JOHN S. DALIS
United States Bankruptcy Judge

Dated at Brunswick, Georgia, this 14 day of August, 2015.

AO 72A
(Rev. 8/82)

15